LAUNDRY, DRY CLEANING, DYE HOUSE WORKERS UNION, LOCAL 3008, A.F.L.–C.I.O., Plaintiff and Respondent, vs. LAUNDRY WORKERS INTERNATIONAL UNION and another, Defendants: WILLIAMS, Defendant and Appellant.

*June 2—June 26, 1958.*

546

For the appellant there were briefs by *Snyder & Greco* of Milwaukee, and oral argument by *E. H. Snyder*.

For the respondent there were briefs and oral argument by *Robert E. Gratz* and *Joseph J. Shutkin,* both of Milwaukee.

CURRIE, J.   The following two issues are before us on this appeal:

(1) Was the trial court confronted with a labor dispute as defined by sec. 103.62, Stats., so as to require compliance with the provisions of sec. 103.56 in the issuance of the temporary restraining order and the temporary injunction?

(2) Was it error for the trial court to issue both the temporary restraining order and the temporary injunction without requiring bond?

In resolving the first issue we deem it would be helpful to review the statutory history of secs. 103.56 and 103.62. The legislature, by ch. 376, Laws of 1931, enacted the "Little Norris-La Guardia Act" comprising secs. 103.51 to 103.62, Stats., as they stood prior to the amendments made thereto by ch. 25, Laws of 1939. Such act was originally numbered secs. 268.18 to 268.29, but later was transferred to ch. 103, Stats., and renumbered secs. 103.51 to 103.62.  Sec. 103.62, as it stood prior to the 1939 amendment, read as follows:

"When used in sections 103.51 to 103.63, and for the purposes of these sections:

"(1) A case shall be held to involve or to grow out of a labor dispute when the case involves persons who are engaged in a single industry, trade, craft, or occupation; or who are employees of one employer; or who are members of the same or an affiliated organization of employers or employees; whether such dispute is (1) between one or more employers or associations of employers and one or more employees or associations of employees; (2) between one or more employers or associations of employers and one or more employers or associations of employers; or (3) *between one or more employees or associations of employees and one or more employees or associations of employees;* or when the case involves any conflicting or competing in-

terests in a 'labor dispute' (as defined in subsection (3)) of 'persons participating or interested' therein (as defined in subsection (2)).

. "(2) A person or association shall be held to be a person participating or interested in a labor dispute if relief is sought against him or it and if he or it is engaged in the industry, trade, craft, or occupation in which such dispute occurs, or is a member, officer, or agent of any association of employers or employees engaged in such industry, trade, craft, or occupation.

"(3) The term 'labor dispute' includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, or concerning employment relations, or any other controversy arising out of the respective interests of employer and employee, regardless of whether or not the disputants stand in the proximate relation of employer and employee." (Italics supplied.)

The amendments effected to such Little Norris-La Guardia Act by ch. 25, Laws of 1939, were, first, to add thereto a new section numbered sec. 103.535, Stats.; and, secondly, to repeal sub. (3) of sec. 103.62 and simultaneously reenact a new subsection bearing the same number reading as follows:

"The term 'labor dispute' means any controversy between an employer and the majority of his employees in a collective-bargaining unit concerning the right or process or details of collective bargaining or the designation of representatives. Any organization with which either the employer or such majority is affiliated may be considered a party to the labor dispute. The provisions of this subsection shall supersede any provision of the statutes in conflict therewith."

Counsel for the defendant Williams contend that the present case involves the type of dispute between two unions which is embraced within the definition of a labor dispute set forth in sub. (1) of sec. 103.62, Stats. From this premise it is urged that the temporary restraining order

violated the provision of sub. (4) of sec. 103.56 because issued for a longer period than the permissible five days. The temporary injunction is attacked because not issued upon the testimony of witnesses taken in open court, and because the trial court did not make the specific enumerated findings of fact, all as required by sub. (1) of sec. 103.56. There can be no question but that the requirements of subs. (1) and (4) of sec. 103.56 were not complied with by the trial court, but these are only applicable in the event the instant action involves a labor dispute as defined by sec. 103.62.

We doubt that sub. (3) of sec. 103.62, Stats., as amended by ch. 25, Laws of 1939, completely renders nugatory sub. (1) of such section. However, sub. (1) does not state that every action between two associations of employees constitutes a labor dispute. As sec. 103.62 was originally enacted in 1931, the definition of a labor dispute for the purposes of Wisconsin's Little Norris-La Guardia Act was not to be found in sub. (1) but rather in sub. (3). When carefully read it will be found that sub. (1) attempts to enumerate the different classes of litigants between whom a labor dispute may be found to exist. The effect of the 1939 amendment in repealing and re-creating sub. (3) was to substitute a new definition of labor dispute for the prior one.

The controversy involved in the instant action with respect to the assets and property of the plaintiff local does not constitute a labor dispute within the definition of such term set forth in sub. (3) of sec. 103.62, Stats., as such subsection stood either before or after the 1939 amendment. Such a controversy is not one involving terms or conditions of employment or representation of employees for collective-bargaining purposes.

Subs. (1) and (3) of sec. 103.62, Stats., as originally enacted, while not entirely identical in wording to the corresponding provisions of the Norris-La Guardia Act, 29

USCA, sec. 113 (a) and (c), p. 128, are very similar thereto. The federal courts have held in cases where the parties fall within the enumerated categories of sec. 113 (a) that no labor dispute exists because the controversy does not meet the statutory definition of sec. 113 (c). *Columbia River Packers Asso. v. Hinton* (1942), 315 U. S. 143, 62 Sup. Ct. 520, 86 L. Ed. 750; *United Electric Coal Companies v. Rice* (7th Cir. 1935), 80 Fed. (2d) 1, certiorari denied, 297 U. S. 714, 56 Sup. Ct. 590, 80 L. Ed. 1000; and *Tisa v. Potofsky* (D. C. N. Y. 1950), 90 Fed. Supp. 175. See also annotation entitled, "Applicability of Norris-La Guardia Act and similar state statutes to injunction action by private complainant," 29 A. L. R. (2d) 323, at page 385, and *Sutton v. Marvidikis* (1957), 6 Utah (2d) 238, 310 Pac. (2d) 735.

Pennsylvania has a Labor Anti-Injunction Act with provisions corresponding to subs. (1) and (3) of sec. 103.62, Wis. Stats., as they stood prior to the 1939 amendment. The Pennsylvania supreme court was called upon to construe these two subsections of such Pennsylvania act in *Bright v. Pittsburgh Musical Society* (1954), 379 Pa. 335, 108 Atl. (2d) 810. The plaintiff therein was a professional entertainer who obtained a preliminary injunction which restrained the defendant musicians' union and its officers from directing its members not to play live music at the public performance of the plaintiff's comedy act, and from maintaining his name on the union's unfair list. The issue was whether the action involved a controversy which was a labor dispute. The court in its opinion stated (379 Pa. at p. 342, 108 Atl. (2d) at p. 814):

"Further, the definition of a case arising out of a labor dispute in section 3 (a) of the Anti-Injunction Act must be construed reasonably to apply only where a dispute concerning terms or conditions of employment or representation of employees is an issue in the proceeding. The identity of the

persons involved in a controversy is insufficient of itself to oust a court of equity of jurisdiction in a case which was otherwise properly brought before it. . . . We, therefore, conclude that this case does not involve or grow out of a 'labor dispute' as that term is defined in the Pennsylvania statutes."

However, the allegations of the complaint in the instant action spell out more than a mere controversy over property rights. This is because it is alleged that the defendant Williams attempted to represent the members of the plaintiff local in collective bargaining with their employers. Furthermore, the temporary restraining order enjoined the defendants "from in any manner interfering with the duly elected officers and employees of said plaintiff union in their capacities as such officers, agents, and employees." This is broad enough to include collective-bargaining activities of the plaintiff local's officers and employees. A similar restraint was not imposed by the temporary injunction which later replaced the temporary restraining order.

The answer of the defendant Williams denied the allegations of the complaint that he attempted to represent the membership of the plaintiff local in collective-bargaining activities with employers. The affidavit of Williams filed in opposition to the application for a temporary injunction did not raise the issue of whether a labor dispute was involved making necessary the compliance with sec. 103.56, Stats., and there is nothing in the record to indicate that such issue was raised before the trial court.

Under the definition of labor dispute contained in sub. (3) of sec. 103.62, Stats., as it now stands after the 1939 amendment, it is essential that there be a controversy between an employer and a majority of his employees relating to collective bargaining or representation. The allegations of the complaint fall far short of alleging such a controversy, nor

is evidence of the same supplied by any other portion of the record.

The constitutionality of the definition of labor dispute set forth in sub. (3) of sec. 103.62, Stats., has been attacked in other litigation before this court involving the enjoining of peaceful picketing claimed to violate sec. 103.535, Stats. However, such a constitutional issue is not before us on the instant appeal.

It is our considered judgment that no controversy involving a labor dispute as defined by sec. 103.62, Stats., is disclosed by the record before us on this appeal. Therefore, the provisions of sec. 103.56 had no application to the issuance of either the temporary restraining order or the temporary injunction.

We now turn to the second issue presented by the appeal of whether it was error for the trial court to issue both the temporary restraining order and the temporary injunction without requiring a bond. The pertinent statute is sec. 268.06, which provides in part as follows:

"In proceedings under section 247.23 the court or judge may, and in all other proceedings the court or judge shall require a bond of the party seeking an injunction, with sureties, to the effect that he will pay to the party enjoined such damages, not exceeding an amount to be specified, as he may sustain by reason of the injunction if the court shall finally decide that the party was not entitled thereto."

The statutory words, "if the court shall finally decide that the party was not entitled thereto," make it clear that the statute is limited to temporary injunctions and does not apply to permanent injunctions embodied in a final judgment. *Smuda v. Jefferson District School Board* (1954), 267 Wis. 84, 86, 64 N. W. (2d) 249. It is noteworthy that sec. 268.06, Stats., makes no mention of a temporary restraining order issued pending the hearing of an application for temporary injunction. While such a temporary restrain-

ing order is a species of injunction it is to be distinguished from a temporary injunction. In an annotation in Ann. Cas. 1917B 123, it is stated:

"There is a well-recognized distinction between a temporary restraining order and a temporary or preliminary injunction which may be stated as follows: A temporary restraining order is generally granted without notice to the opposite parties and is intended only as a restraint on the defendant until the propriety of granting a temporary injunction can be determined and it goes no further than to preserve the *status quo* until that determination. It is limited in its operation and continues only for such a reasonable time as may be necessary to have a hearing on an order to show cause why a temporary injunction should not issue. On the other hand a temporary or preliminary injunction is rarely granted without notice, but when granted it is effective until the trial of the cause in which it is issued."

Black's Law Dictionary (4th ed.), p. 1247, defines "restraining order" as follows:

"RESTRAINING ORDER. In equity practice. An order which may issue upon the filing of an application for an injunction forbidding the defendant to do the threatened act until a hearing on the application can be had. Though the term is sometimes used as a synonym of 'injunction,' *a restraining order is properly distinguishable from an injunction,* in that the former is intended only as a restraint upon the defendant until the propriety of granting an injunction, temporary or perpetual, can be determined, and it does no more than restrain the proceedings until such determination. *Wetzstein v. Boston, etc., Min. Co.* 25 Mont. 135, 63 P. 1043. *Mason v. Milligan,* 185 Ind. 319, 114 N. E. 3; *Labbitt v. Bunston,* 80 Mont. 293, 260 P. 727, 730." (Italics supplied.)

See also Law of Injunctions, Spelling and Lewis (1926), p. 30, sec. 18; 28 Am. Jur., Injunctions, p. 203, sec. 11; and *Liu v. Farr* (1950), 39 Hawaii, 23, 28.

The legislature has made a clear distinction between temporary restraining orders and injunctions in sec. 268.08, Stats., which provides:

"The court or judge may, before granting the injunction, make an order requiring cause to be shown why the injunction should not be granted, and the defendant may in the meantime be restrained."

The court is cognizant of the fact that it has been common practice extending over many years for courts of this state to issue such temporary restraining orders without requiring bond, usually as part of the order to show cause setting a date for the hearing of the application for temporary injunction. Apparently the courts in so doing have construed the provisions of sec. 268.06, Stats., to be inapplicable to such restraining orders. If the legislature were in disagreement with such long-continued practice, it would seem likely that it would have taken steps to amend sec. 268.06 to make it clear that it did apply to temporary restraining orders. This the legislature has failed to do. It is our conclusion that sec. 268.06 is inapplicable to such temporary restraining orders. We are aware that the Idaho court reached the opposite conclusion with respect to a somewhat similar statute in *Beech v. United States F. & G. Co.* (1934), 54 Idaho, 255, 30 Pac. (2d) 1079, 92 A. L. R. 264, but we decline to follow such precedent.

In construing sec. 268.06, Stats., our attention has been called to the case of *Brown v. Sucher* (1950), 258 Wis. 123, 45 N. W. (2d) 73. However, such case involved the issue of the requirement of bond for a temporary injunction which was issued after a hearing held on a motion of application and did not involve a temporary restraining order at all. This is clearly borne out by the printed briefs and appendix in that case. Unfortunately the opinion erroneously referred

to the temporary injunction as a "restraining order," and this error was carried over into the headnotes in which such temporary injunction was termed a "temporary restraining order."

Apparently counsel for the plaintiff local and the trial court were of the opinion that sec. 268.06, Stats., is applicable to temporary restraining orders. This is because three days after the issuance of the temporary restraining order, an order for bond was issued upon motion of plaintiff's counsel, and a bond was subsequently issued and filed. The record is silent as to why the order of temporary injunction of January 8, 1958, canceled such bond and required no bond with respect to the temporary injunction. Counsel for the plaintiff local contend that this was the result of a stipulation by counsel for the defendant Williams, and that this is evidenced by the approval indorsed upon the order of temporary injunction by Attorney Tibbs.

Ordinarily an approval of an order or judgment *"as to form"* by counsel for a party does not preclude such party from later attacking such order or judgment because of error. Such a restricted approval under ordinary circumstances is usually intended as merely signifying that the terms thereof are in accord with the prior determination of the court. Under the facts of the instant case, it is difficult for us to conceive that the able counsel for the defendant Williams would have given such written approval of the temporary injunction order without noting his objection to the dispensing of bond in some manner in the record, if he had not agreed thereto. The presumption of regularity that attends the acts of public officers is applicable to judges and courts. 31 C. J. S., Evidence, p. 792 *et seq.,* sec. 145. Because of the peculiar facts of the instant case we consider that this is a proper case in which to invoke such presumption with respect to the trial court's act in affirmatively dispensing

with bond and presume that the trial court would not have done so except upon consent of defendant Williams' counsel.

The failure to require a bond as a condition to entering a temporary injunction is not a jurisdictional error but a mere irregularity. *Oppermann v. Waterman* (1896), 94 Wis. 583, 69 N. W. 569. Therefore, such requirement is one which could be waived or dispensed with by stipulation of the party enjoined, or his counsel.

The briefs raise no point as to the wording of either the temporary restraining order or the temporary injunction. However, in the hope that it may lead to some improvement in future practice in these matters, we voice our disapproval of such wording. The quoted portions of both orders read as if a permanent injunction were being issued. This is because neither order directly specifies the time during which the imposed restraints are to continue. The temporary restraining order should have limited the period of restraint until the hearing and determination of the order to show cause for temporary injunction, and the temporary injunction should have limited its operation until the trial and determination of the action.

*By the Court.*—Orders affirmed.