**Howard M. GEISINGER, Individually and on Behalf of all Other Persons Similarly Situated, Plaintiffs,**

v.

**Honorable Clair VOSS, Circuit Judge for the Circuit for Waukesha County, et al., Defendants.**

Civ. A. No. 72-C-352.

United States District Court,
E. D. Wisconsin.

Dec. 26, 1972.

Gerald J. Bloch, and Jay L. Himes, Milwaukee, Wis., for plaintiffs.

August Fabyan, Jr., Asst. Corp. Counsel, Waukesha, Wis., for defendants.

## OPINION AND ORDER

REYNOLDS, District Judge:

This is a civil rights action challenging an ex parte order of the Waukesha Family Court Commissioner ordering the named plaintiff herein, a defendant in a divorce action, to vacate his home. Jurisdiction of this court is grounded upon Title 28 U.S.C. § 1343. Plaintiffs have moved for a temporary restraining order. In addition I must decide whether a three-judge court should be convened pursuant to Title 28 U.S.C. § 2281. I find that the motion for a temporary restraining order should be denied and that a three-judge court should be requested.

The complaint in this action alleges as follows. Evelyn L. Geisinger petitioned the defendant A. Warren Cahill, the Waukesha Family Court Commissioner, for a temporary order pursuant to Wis. Stats. § 247.23(1) to provide for herself pending the outcome of a divorce action she was about to commence. She gave no notice to the named plaintiff in the action before me (the defendant in the divorce action), Howard M. Geisinger. The petition, a printed form with blanks left open for the name of the petitioner and the Wisconsin county in which the action was to be brought, alleged that a divorce action was involved and—

> "(5) That petitioner has insufficient funds to enable her to carry on this action, and support the minor children, and maintain herself.

> "(6) *That petitioner fears her legal rights will be jeopardized if the defendant is allowed to live in the same household with petitioner;* and, that petitioner fears her legal rights, and the rights of the children to support, will be jeopardized unless the defendant is restrained from encumbering or disposing of his property or removing the same out of state during the pendency of this action." (Emphasis added.)

Wisconsin Statute § 247.23(1), as amended by Ch. 220 § 8 Laws of Wisconsin 1971 Session, reads as follows:

> "(1) In every action affecting marriage, the court or family court commissioner may, during the pendency thereof, make such temporary orders concerning the care, custody and suitable maintenance of the minor children, requiring either party to pay such sums for the support of the other party and enabling the other party to carry on or defend the action, and requiring either party or both to pay such sums for the support of the minor children, and in relation to the persons or property of the parties as in its discretion shall be deemed just and reasonable in light of all circumstances, including the incomes and estates of the parties, and may prohibit either spouse from imposing any restraint on the personal liberty of the other. * * * "

On June 9, 1972, the Family Court Commissioner issued the following order to show cause, an order which like the petition that triggered it, is a printed form with blanks left open for names and dates:

> "On the summons and the verified petition of EVELYN L. GEISINGER, and on motion of plaintiff's attorney:

> "IT IS HEREBY ORDERED that the above named defendant show cause, if any he has, before the Hon. A WARREN CAHILL, Family Court Commissioner in and for the Circuit and County Courts of Waukesha County, at the Court House, Room 253

in the City and County of Waukesha, Wisconsin, on the 11th day of July, at 10:00 o'clock A.M. in the forenoon or as soon thereafter as counsel can be heard, why an order should not issue requiring the following to-wit:

"(1) That the defendant pay to the plaintiff a suitable sum to enable her to carry on this action.

"(2) That plaintiff be allowed and paid by the defendant a suitable allowance for her support, pending this action;

"(3) That plaintiff be awarded the custody and charge of the following infant children, to wit:

pending this action, and that defendant be required to pay an allowance suitable for the support and maintenance of the infant children;

"(4) That defendant refrain, pending this action, from imposing any restraint upon the personal liberty of the plaintiff (or interfering with the children committed to her custody); and

"(5) That the defendant desist and refrain, pending this action, from disposing of or encumbering any of his property or removing any of his property out of this state.

"AND IT IS FURTHER ORDERED, *pending hearing on this Order*:

"(1) *That promptly upon the service of this Order the defendant shall vacate the household of the parties*;

"(2) That the defendant refrain, pending hearing on this Order, from imposing any restraint upon the personal liberty of the plaintiff (or interfering with the children now in her custody);

"(3) That the defendant desist and refrain, pending hearing on this Order, from disposing of or encumbering any of his property or removing any of his property out of this state, and

"(4) That at the hearing on this Order, the defendant shall produce a statement of his earnings for the past 8 weeks, signed by his employer.

"And let a copy of this Order and supporting papers be served on the defendant at least Twelve (12) hours before the time fixed herein for showing cause." (Emphasis added.)

This order was issued ex parte and by its terms without any hearing and without prior notice to Howard M. Geisinger, the named plaintiff herein.

On June 12, 1972, plaintiff was served with the divorce summons, petition for temporary relief, and the order to show cause by a deputy sheriff under the control of the defendant Edward J. O'Connor, the Waukesha County sheriff. Pursuant to the order to show cause, plaintiff was required to promptly vacate his home and instructed not to return.

Plaintiffs claim that Wis.Stats. § 247.-23(1) does not authorize an order in favor of either spouse ordering the other to vacate the family home. Alternatively it is claimed that Wis.Stats. § 247.-23(1) as applied is unconstitutional in that an ex parte order to vacate the family home is a denial of procedural due process. It is requested that the defendants be enjoined from issuing ex parte orders and that § 247.23(1) as applied be declared unconstitutional.

At a hearing in this case in which all parties participated, defendants represented by way of affidavit the following:

"(2) That since 1959, and in reliance upon the provisions of \* \* \* Sec. 268.02; Sec. 268.04; Sec. 268.06; Sec. 268.08; *and Sec. 247.23*; the \* \* \* Family Court Commissioner, in a typical divorce case, based upon the wife's affidavit that her legal rights will be jeopardized if the husband is allowed to live in the same household with her, does issue an Order to Show Cause requiring the husband to show cause why a Temporary Order should not issue, and in the meantime the husband [is immediately required to vacate the family residence] \* \* \*.

\*   \*   \*   \*   \*   \*

"(6) \* \* \* that the most likely time for the eruption of physical violence and/or threats and harassment by the husband is at the commencement of a divorce action when the husband is emotionally disturbed by reason of the service of papers upon him; that it is precisely at this period of time when the wife and family need and deserve the greatest protection the law can afford, and that ordering the husband to vacate the household of the parties upon the service of the Order to Show Cause is the minimum requirement necessary to protect the wife and family pending hearing on the Order to Show Cause."

It was also represented that 70 of the 71 Wisconsin counties follow a similar practice.

I turn first to the issue of whether I should request a three-judge court. Title 28 U.S.C. § 2281 reads as follows:

"An interlocutory or permanent injunction restraining the enforcement, operation or execution of any State statute by restraining the action of any officer of such State in the enforcement or execution of such statute \* \* \* shall not be granted by any district court or judge thereof upon the ground of the unconstitutionality of such statute unless the application therefor is heard and determined by a district court of three judges \* \* \*."

■ The complaint in this action alleges that § 247.23(1) is unconstitutional and seeks an injunction restraining the defendants from enforcing it. Although some of the defendants in this action are arguably local, not state officials, it has long been held that for purposes of § 2281 a local official is a state officer if "he enforces a statute which 'embodies a policy of statewide concern \* \* \*.'" Rorick v. Board of Commissioners, 307 U.S. 208, 212, 59 S.Ct. 808, 811, 83 L.Ed. 1242 (1939). For "In that enforcement, he is acting in a true sense as an officer of the state." Spiel-

man Motor Sales Co. v. Dodge, 295 U.S. 89, 95, 55 S.Ct. 678, 680, 79 L.Ed. 1322 (1935); Turner v. Fouche, 396 U.S. 346, 353 n. 10, 90 S.Ct. 532, 24 L.Ed.2d 56 (1970).

■■ I then turn to the statute challenged. First, it is clear that § 2281 is not avoided simply because § 247.23(1) is attacked as applied rather than on its face. Ex Parte Bransford, 310 U.S. 354, 60 S.Ct. 947, 84 L.Ed. 1249 (1940); Turner v. Fouche, 396 U.S. 346, 353 n. 10, 90 S.Ct. 532, 24 L.Ed.2d 567 (1970). Second, *assuming* that a challenge to the application of a statute which has statewide effect may not require a three-judge court if the particular application is of only local significance, it appears that the application at issue in this case is of statewide effect in that Waukesha's application is shared by 70 out of the 71 other Wisconsin counties. Turner v. Fouche, 396 U.S. 346, 353 n. 10, 90 S.Ct. 532, 536, 24 L.Ed.2d 567 (1970) ("But Georgia does not suggest that *so many counties* have taken advantage of this provision that the present selection of the board by the grand jury in effect amounts to a local option." (Emphasis added.)) Cf. Board of Regents v. New Left Education Project, 404 U.S. 541, 544, 92 S.Ct. 652, 654, 30 L.Ed.2d 697 (1972) ("These rules can scarcely be described as matters of statewide concern or expressions of a statewide policy when *a large percentag*e of Texas colleges and universities *are unaffected* by them and could not be affected by any pronouncement which a federal court might make on their constitutionality." (Emphasis added.)) Nor can § 2281 be avoided in that the complaint also challenges ex parte orders on nonconstitutional grounds. Florida Lime & Avocado Growers, Inc. v. Jacobsen, 362 U.S. 73, 80 S.Ct. 568, 4 L.Ed.2d 568 (1960).

The technical requirements of § 2281 being met, the only question left is whether the challenge to § 247.23(1) is so insubstantial or frivolous as to dispense with the need for a three-judge court. Idlewild Bon Voyage Liquor Corp. v. Epstein, 370 U.S. 713, 82 S.Ct. 1294, 8 L.

Ed.2d 794 (1962). In that this text differs only in degree from the temporary restraining order requirement of a finding of a substantial probability of success, I shall treat both questions together.

■■ Wisconsin Statute § 247.-23(1), while it grants to the Family Court Commissioner the power to issue temporary orders to provide for either spouse and their children during the pendency of a divorce action, does not specifically state that this power includes the discretion to order the husband to vacate the family home. Plaintiffs contend, however, that such orders, if they are permitted at all, rest upon § 247.23(1), and defendants by affidavit cite this statute along with other sections as giving the Family Court Commissioner the power to issue vacation orders. Further, it would seem clear that regardless of what the statute so empowers, the Family Court Commissioner does in fact have the power to award the family home to the wife. Dillon v. Dillon, 46 Wis.2d 659, 664, 176 N. W.2d 362 (1970). However, at oral argument defendants seem to take the posisition that ex parte orders to vacate the family residence are based not on § 247.-23 but rather upon §§ 268.02, 268.04, 268.06, and 268.08. If in fact these latter statutes rather than § 247.23 enable the Family Court Commissioner to take the action herein contested, then, of course, in terms of the challenge before me today, § 247.23 is clearly constitutional. Both the facts of the case before me and Wisconsin law, however, strongly indicate that § 247.23(1) is in fact the enabling statute.

Chapter 268 of the Wisconsin Statutes deals with general injunctive powers. It would seem applicable to Family Court Commissioners in that Wis.Stats. § 247.-13(1) grants them the powers of a court commissioner, and Wis.Stats. § 252.-15(4) gives court commissioners the power to issue injunctions. Section 268.02(1) allows a "temporary injunction"—

"When it appears from his pleading that a party is entitled to judgment and any part thereof consists in restraining some act, the commission or continuance of which during the litigation would injure him * * *."

Section 268.08 allows that—

"The court or judge may, before granting the injunction, make an order requiring cause to be shown why the injunction should not be granted, and the defendant may in the meantime be restrained."

However, the temporary order at issue before me was granted without reference to the divorce complaint and without determining whether the property the husband was ordered to vacate could properly be granted to the wife if she ultimately proved successful in securing her divorce (e. g., the home could be owned by the husband's parents). Indeed, the petition upon which the temporary order was based alleges only that the petitioner is bringing a divorce action and lacks even a conclusionary statement that she will ultimately be successful, much less setting forth jurisdictional facts and grounds upon which she will bring her action.

■■ Wisconsin case law also suggests that orders for affirmative action, such as the type at issue today, can only be grounded on § 247.23. Under Wisconsin law an ex parte order can go no further than to preserve the status quo. Laundry, etc., Local 3008 v. Laundry Workers International Union, 4 Wis.2d 542, 544, 91 N.W.2d 320 (1958). It "neither gives respondents new rights nor alters the positions of the parties." Shearer v. Congdon, 25 Wis.2d 663, 668, 131 N.W.2d 377, 380 (1964). An order to vacate the family home is specifically grounded on the belief that the status quo must be changed; i. e., that preservation of the status quo will harm the petitioner. A perusal of § 247.23(1) suggests that this may be the very reason why it was enacted in light of the grant of power contained in §§ 268.02 and 262.08, for by its terms § 247.23(1)

expressly allows for changes in the status quo when its preservation pending determination of the divorce will cause inequitable results. It may well be that the use of the term "temporary order" in § 247.23(1) as opposed to the use of the terms "temporary injunction" or "temporary restraining order" in Chapter 268 is more than a matter of semantics. Finally, it should also be noted that while the Family Court Commissioner's order contains no reference to enabling legislation, the petition upon which the order is based is specifically grounded upon § 247.23.

■ Assuming then, as is likely, that § 247.23(1) enables the ex parte order to vacate, which is the issue before me, I turn to an evaluation of the merits of plaintiffs' challenge. Plaintiffs do not challenge the power of the Family Court Commissioner to order a husband to vacate the family home but rather challenge his power to do so ex parte. I find that this procedural challenge fares a substantial probability of success.

■ Divorce laws and procedure have long been thought a matter of state prerogative, free from federal interference. It is in this regard noteworthy that well over a hundred years ago the Supreme Court disclaimed "any jurisdiction in the courts of the United States upon the subject of divorce" even though diversity of citizenship might be established. Barber v. Barber, 21 How. 582, 584, 16 L.Ed. 226 (1858). However, recent decisions have made it clear that when state law regulating divorce comes into conflict with the Fourteenth Amendment, then it is the duty of the federal courts to resolve that conflict in favor of the constitution. Boddie v. Connecticut, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971); Wymelenberg v. Syman, 328 F.Supp. 1353 (E.D.Wis.1971).

Wisconsin law does not appear to give the plaintiff-wife in a divorce action an absolute right to the family household during the pendency of the action.

Rather, whether or not that power be grounded on Chapter 268, § 247.23(1), the power of the Family Court Commissioner to order a defendant-husband to vacate the home, is discretionary. Dillon v. Dillon, 46 Wis.2d 659, 664, 176 N.W.2d 362 (1970). Indeed, an absolute right, hanging as it would on simply commencing a suit, would raise grave constitutional questions. Cf. Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971). The question posed in this case then is simply whether the Fourteenth Amendment requires that a defendant-husband in divorce actions be given notice and an opportunity to be heard prior to the Family Court Commissioner's deciding whether the plaintiff-wife's petition for sole use of the family home should be granted.

It would seem with the recent decision in Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), dealing with replevin statutes, that there would be little room to argue that temporary deprivation of one's home is not a deprivation of an interest encompassed within the Fourteenth Amendment's procedural due process protection:

> " * * * The replevin was not cast as a final judgment; most, if not all, of the appellants lacked full title to the chattels; and their claim even to continued possession was a matter in dispute. Moreover, the chattels at stake were nothing more than an assortment of household goods. Nonetheless, it is clear that the appellants were deprived of possessory interests in those chattels that were within the protection of the Fourteenth Amendment." 407 U.S. at 84, 92 S.Ct. at 1996.

Applying the three-pronged test set forth in *Fuentes* for determining whether a particular deprivation is one of those "truly unusual" " 'extraordinary situations' that justify postponing notice and opportunity for a hearing" (407 U.

S. at 90, 92 S.Ct. at 1999) strongly suggests that an ex parte order to vacate the family household would rarely meet the test.

"\* \* \* Only in a few limited situations has this Court allowed outright seizure without opportunity for a prior hearing. First, in each case, the seizure has been directly necessary to secure an important governmental or general public interest. Second, there has been a special need for very prompt action. Third, the State has kept strict control over its monopoly of legitimate force: the person initiating the seizure has been a government official responsible for determining, under the standards of a narrowly drawn statute, that it was necessary and justified in the particular instance. \* \* \*" 407 U.S. at 90–91, 92 S.Ct. at 1999–2000.

Two interests are apparently sought to be furthered by the state by issuing ex parte orders—(1) the preservation of a wife's legal rights, and (2) her personal safety. It is questionable, however, whether either satisfies the initial requirement of "an important governmental or general public interest." Even if the right to obtain a divorce because of its peculiar nature may be said to be an important public interest as opposed to a private interest, the argument that the state must order immediate vacation of the family residence in order to protect the plaintiff-wife's legal right to a divorce because *state* law might extinguish that right if she continued to reside in the same house as her defendant-husband would seem to be without much weight inasmuch as the state could (if such is not already the case) permit husband and wife to reside in the same household pending determination of the divorce action without mooting that action if it wished. As for the state's interest in preventing potential altercations if upon their own volition both husband and wife decide to remain in the same household, the same type argument might have been used to justify the repossession schemes outlawed in *Fuentes*, schemes which avoid private party attempts to reclaim property by allowing the sheriff to act as the stakes holder. In that case, however, the court said:

"\* \* \* The replevin of chattels, as in the present cases, may satisfy a debt or settle a score. But state intervention in a private dispute hardly compares to state action furthering a war effort or protecting the public health." 407 U.S. at 92–93, 92 S.Ct. at 2000.

Second, even if I assume that an important public interest is involved, it is unlikely that *Fuentes'* second criterion is met. This case on its face demonstrates that a "special need for very prompt action" is lacking in the type of order at issue today. In the instant case three days elapsed between the issuance of the order to vacate and the serving of that order upon Mr. Geisinger. Further, the order on its face only demanded that it be served a half day before the scheduled hearing. Even if the prompt action test be viewed as hinging on when the husband is officially notified of the divorce action, this still offers no explanation why the husband must leave the household pending a hearing rather than the wife voluntarily absenting herself.

Third, assuming that the Wisconsin procedure passes the first two tests, the probability that it passes the third— that the order without hearing is "necessary and justified in the *particular* instance"—is doubtful. The order at issue herein was a preprinted form based on a preprinted petition. There was no evaluation by the Family Court Commissioner of (1) the probability of the wife's ultimate chance of gaining a divorce; (2) whether the divorce summons would come as a shock to the husband; (3) whether there was any history or likelihood of physical abuse with regard to this particular couple; or (4) whether there was any reason why the

plaintiff-wife, if she did not wish to reside in the same household as the defendant-husband during the pendency of the action, could not absent herself from the family household pending a hearing. As the court in *Fuentes* stated:

"* * * no state official reviews the basis for the claim to repossession; and no state official evaluates the need for immediate seizure. There is not even a requirement that the plaintiff provide any information to the court on these matters. The State acts largely in the dark." 407 U.S. at 93, 92 S.Ct. at 2001.

There is an old saw that a man's house is his castle. If modern times will not permit him moats and battlements, it still remains, I strongly suspect, that the constitution insists that he be allowed, except in exceptional circumstances, a few words before the sheriff escorts him out the door. In light of *Fuentes*, I find it probable that a wife may not obtain an ex parte order ordering her husband to vacate the family household unless she demonstrates to the Family Court Commissioner's satisfaction that she will likely be subject to physical abuse and that she is unable to temporarily reside elsewhere pending a hearing. Having found that the constitutional challenge in this case is neither frivolous nor insubstantial, it is proper that I request the convening of a three-judge court. However, the motion for a temporary restraining order must rest on more than just a probability of success; irreparable harm must also be demonstrated. I turn to this factor next.

I find that plaintiffs have failed to demonstrate the necessary irreparable harm required before a temporary restraining order may issue. At the hearing held before me in this matter, defendants offered to give the named plaintiff an immediate hearing with regard to the order to vacate his home. In that Mr. Geisinger has already vacated his home and in that this action does not challenge the power of the Family Court Commissioner to order such a vacation but merely the manner in which such an order is granted, I find that defendants' offer negates the need for immediate injunctive relief with regard to Mr. Geisinger. Temporary relief with regard to the class plaintiffs was not discussed at the hearing held before me, and noting the fact that the practice contested in this action is an established procedure that has apparently long gone uncontested in almost all of the counties of Wisconsin, I feel that if a class temporary restraining order is to be granted, it should be granted only by the full three-judge panel after argument directed specifically to its issuance.

Accordingly, I will request the impanelling of a three-judge court pursuant to Title 28 U.S.C. §§ 2281 and 2284 in this matter.

It is therefore ordered that plaintiffs' motion for a temporary restraining order be and it hereby is denied.