IN RE the MARRIAGE OF:
Patricia J. SANDY, Petitioner-Appellant,†

v.

William J. SANDY, Jr., Respondent.

Court of Appeals

*No. 81–873. Submitted on briefs October 28, 1981.
—Decided January 27, 1982.*
(Also reported in 316 N.W.2d 164.)

† Petition to review granted.

For the petitioner-appellant the cause was submitted on the brief of *Terry W. Rose* of *Rose & Rose* of Kenosha.

For the respondent the cause was submitted on the brief of *Wilbur W. Warren, III* of *Madrigrano, Warren, Bastian & Gagliardi, S.C.,* of Kenosha.

Before Voss, P.J., Brown and Scott, JJ.

SCOTT, J.   This is an appeal from an order entered during a divorce action between Patricia and William Sandy, Jr.  The order provided that custody of the couple's children and exclusive possession of their home were to alternate between them every two months.  William was to have custody and possession for the first two-

month period, and Patricia was ordered to vacate the home for the duration of his stay. Patricia petitioned for leave to appeal this nonfinal order. This court granted the petition on the grounds that an appeal would clarify an issue of general importance in the administration of justice.

The sole issue on appeal is this: During the pendency of a divorce action, do the family court commissioner and trial judge have the authority to evict a spouse from the homestead of the parties where there is no actual or threatened physical violence between them? We hold that the family court commissioner and trial judge do have such authority when the order to vacate is issued after notice and a hearing. The family court commissioner's order in this case was entered after a contested hearing and is, therefore, affirmed.

On April 5, 1979, Patricia commenced this action for divorce. Temporary custody of the parties' four minor children and possession of their home were first given to Patricia. Pursuant to stipulation of the parties, this arrangement was later changed to one of joint custody and possession. On March 25, 1981, after a contested hearing, the family court commissioner entered a temporary order establishing yet a third arrangement. This order provided that beginning on April 1, 1981, Patricia was to vacate the home, which would be in William's exclusive possession for a period of sixty days. William would also have physical custody of the children during that time. On June 1, 1981, William would vacate the home; Patricia would move back in and have possession of the home and physical custody of the children for the next sixty days. There was no actual or threatened physical violence between the parties at the time the order was entered.

Patricia appealed the March 25th order to the circuit court. The court affirmed the order, determining that the family court commissioner had inherent authority to

enter the order because it was in the "best interests of the children." The court also found that secs. 767.23(1m) and 813.025(2), Stats., requiring that the court have reasonable grounds to believe that criminal battery has or may occur applies only to *ex parte* orders. Thus, the court held that those sections did not apply to the order of March 25 because the order had been entered after notice and a hearing.

On appeal to this court, Patricia challenges the circuit court's reading of secs. 767.23(1m) and 813.025(2), Stats. She contends that, interpreted together, these statutes mean that Wisconsin family court commissioners and trial judges lack authority to order a party to vacate the home during a divorce action unless there is a showing of actual or threatened domestic violence. Patricia claims that this is true of orders entered after notice and a hearing as well as *ex parte* orders.

William argues that the statutes grant family court commissioners and trial judges the authority to order a spouse, after notice and a hearing, to vacate the home during a divorce action if such an order is necessary to protect the best interests of the minor children.

Section 767.23(1)(a), Stats., explicitly gives family court commissioners and trial judges the power to "make just and reasonable temporary orders" concerning custody and support of minor children during the pendency of an action affecting the marriage.

Section 767.23(1)(j), Stats., allows temporary orders to be made "[p]rohibiting either spouse from imposing any restraint on the personal liberty of the other spouse." Section 767.23(1n), Stats., provides that before making a temporary order concerning custody, restraint on personal liberty or the other matters specified in the statute, the court or family court commissioner "shall consider those factors which the court is required by this chapter

to consider before entering a final judgment on the same subject matter."

Section 767.24(2), Stats., states that "[i]n making a custody determination, the court shall consider all facts in the best interest of the child." That section lists a number of factors to be considered in making a custody determination, which include the interaction and interrelationship between the child and the parents, the child's adjustment to the home, and the mental health of the parties and the child. The "best interests of the child" are paramount in custody decisions. *Subrt v. Subrt,* 275 Wis. 628, 633, 83 N.W.2d 122, 124–25 (1957).

We hold that these sections, read together, grant judges or family court commissioners the authority to order a spouse to vacate the home temporarily during a divorce action if the court determines, after notice and a hearing, that such an order is necessary to protect the best interests of the minor children.

Patricia argues, however, that any authority granted under those sections is limited by secs. 767.23(1m) and 813.025(2), Stats. Those sections allow *ex parte* restraining orders which require one spouse to avoid the premises occupied by the other only in cases where criminal battery has or may occur. In Patricia's view, these statutes govern all orders, whether *ex parte* or not, which require a spouse to vacate the home. Thus, she contends that she cannot be ordered to vacate the home absent a showing of possible domestic violence.

Section 767.23(1m), Stats., is part of a statute dealing with temporary orders regarding child custody and support of spouse and children during divorce proceedings or other actions affecting the family. It provides:

(1m) If a family court commissioner believes that a temporary restraining order or injunction under s. 813.-025(2) is appropriate in an action, the court commission-

er shall inform the parties of their right to seek the order or injunction and the procedure to follow. On a motion for such a restraining order or injunction, the family court commissioner shall submit the motion to the court within 5 working days.

Section 813.025(2), Stats.,[1] deals with *ex parte* restrain orders. Subsection (a) requires that the judge[2]

---

[1] Section 813.025(2), Stats., provides as follows:
EX PARTE RESTRAINING ORDERS.

. . . .

(2)(a) A judge may issue a temporary restraining order requiring a person to avoid premises occupied by someone with whom the person is living or has lived in a spousal relationship, as defined in s. 46.95(1)(c), or not to contact that person or both. Such an order may only be issued if the judge has reasonable grounds to believe that a violation of s. 940.19 has occurred or, based on the prior conduct of the parties, may occur. The order may only be issued to the person whom the judge believes has violated or may violate s. 940.19. A petition for the order may be filed by the alleged or potential victim of the violation of s. 940.19. Violation of an order issued under this subsection is punishable under s. 940.33.

(b) Notice need not be given to the defendants prior to the issuance of a temporary restraining order under this subsection. The court may grant the temporary restraining order at any time before the hearing and determination of the application for an interlocutory injunction. The temporary restraining order shall be effective only for 5 days unless extended after notice and hearing thereon, or upon written consent of the parties or their attorneys. The temporary restraining order shall not remain in force beyond the time of the determination of the application for an interlocutory injunction. The order or injunction under this subsection may be issued only by a judge and not by a court commissioner. An injunction under this subsection shall not be effective for more than 2 years.

[2] The parties do not raise the issue of whether family court commissioners are authorized to issue *ex parte* restraining orders in cases where domestic violence is involved, and we do not reach that issue here. Our holding recognizes the authority of a family court commissioner to issue an order under secs. 767.23

may only grant such an order "if the judge has reasonable grounds to believe that a violation of s. 940.19 [criminal battery] has occurred or, based on the prior conduct of the parties, may occur."

Subsection (b) of sec. 813.025(2), Stats., establishes that notice requirements need not be met under these circumstances. However, any temporary restraining order issued under subsection (a) "shall be effective only for 5 days unless extended after notice and hearing thereon, or upon written consent of the parties or their attorneys."

Patricia contends that sec. 813.025(2), Stats., applies whenever a spouse is ordered to vacate the house while divorce proceedings are pending. Thus, she argues, no order can be issued unless the family court commissioner has reasonable grounds to believe that a criminal battery has occurred or may occur.

It is not clear from sec. 813.025(2), Stats., whether the requirement of a showing of violence applies only to *ex parte* orders or to orders entered after notice and a hearing as well. Section 813.025(2)(b), Stats., begins by stating that the defendant need not be given notice "prior to the issuance of a temporary restraining order under this subsection." This suggests that the section applies only to *ex parte* orders. Moreover, this section is entitled "Ex parte restraining orders." Titles of statutes may be resorted to in order to resolve a doubt as to statutory meaning. *Pure Milk Products Cooperative v. National Farmers Organization*, 64 Wis. 2d 241, 253, 219 N.W.2d 564, 571 (1974). However, the statute goes on to refer to a "hearing and determination of the application for an interlocutory injunction" and later to "[t]he order or in-

_____

(1)(a) and (j), Stats., after notice and a hearing. We note that sec. 813.025(2)(a), Stats., governing *ex parte* orders provides that an order or injunction under that subsection "may be issued only by a judge and not by a court commissioner."

junction under this subsection." It is unclear from the statute itself, therefore, whether or not its application is limited to *ex parte* orders.

When a statute is ambiguous, the court will consider legislative history to determine legislative intent. *Robinson v. Kunach,* 76 Wis. 2d 436, 444, 251 N.W.2d 449, 452 (1977).

Section 813.025(2), Stats., was created by ch. 111, Laws of 1979. Chapter 111 was concerned with problems of domestic violence. In addition to adding sec. 813.025 (2), Stats., ch. 111 also created a domestic abuse council, provided for grants to domestic abuse programs and added certain provisions to the criminal laws directed toward more effective control of domestic violence.

According to reports and discussions of the Special Committee on Domestic Violence established by the Legislative Council to study the problem of domestic violence and to recommend legislation, it was the universal practice of Wisconsin courts and family court commissioners to order an abusive spouse away from the home for the pendency of a divorce action based on the authority granted them by sec. 247.23, Stats. (the forerunner of the current sec. 767.23, Stats.). Thus, a court was authorized to prohibit a spouse from imposing any restraints on the personal liberty of the other spouse after an action affecting the marriage had been commenced.[3] The original legislation proposed by the Special Committee to the Legislative Council, and subsequently to the legislature as 1979 Assembly Bill 169, made violation of such an order a misdemeanor. As indicated by the Special Committee's discussions and the Legislative Council's notes to the bill, the purpose of this change was to make it possible for the violator of an order to vacate the home or to be arrested

---

[3] *See* Information Memorandum 78-8 at 1; Wisconsin Legislative Council Report No. 79-4 to the 1979 Legislature at 5.

or removed from the premises by a law enforcement officer, instead of merely being punished for civil contempt.[4]

Assembly Bill 169 was subsequently amended by the addition of what became secs. 767.23(1m) and 813.025(2), Stats.[5] These sections essentially extended the authority for ordering an abusive spouse to vacate the home to situations where no divorce action was pending—one of a number of suggestions for legislation made at public hearings held by the Special Committee.[6]

There is no suggestion in the committee reports and discussions of sec. 813.025(2), Stats., of any intention to limit thereby the general authority given courts and family court commissioners under sec. 767.23, Stats., to make temporary orders regarding child custody, support and similar matters during the pendency of a divorce action. Rather, the committee discussions and the reference materials prepared by the Legislative Council staff suggest strongly that the reason for the requirement in sec. 813.025(2)(a), Stats., of a showing of actual or threatened physical violence was to avoid possible constitutional problems if *ex parte* orders to vacate were allowed to issue without such a showing.

Information Memorandum 78–8, entitled "Powers and Duties of Family Court Commissioners [Relating to Domestic Violence]," noted the practice by courts and family court commissioners of ordering an abusive spouse from the home during divorce actions under the authority of sec. 247.23, Stats. (the "restraint on personal liberty" provision). The memorandum commented on the lack of

[4] *See* Wisconsin Legislative Council Report No. 79–4 to the 1979 Legislature at 5.

[5] *See* Assembly Substitute Amendment 1 to 1979 Assembly Bill 169.

[6] *See* Proceedings of Special Committee on Domestic Violence, Dec. 2, 1977 and Jan. 13, 1978.

statutory criteria for issuance of such orders and discussed the criteria that had been developed by the courts. In Milwaukee county, such orders were issued only after a hearing; in all other counties, the orders were issued *ex parte* with an opportunity to petition for review. Prior to 1972, *ex parte* orders to vacate were issued based on a spouse's affidavit that his or her legal rights would be jeopardized if the other spouse were allowed to remain in the home. At the time the Information Memorandum was prepared, however, most counties apparently required a greater showing of need. The most common standards were danger to the complaining spouse's safety, imminent danger of physical harm and/or actual acts of physical violence.

The greater showing of need after 1972 was undoubtedly due to the constitutional problems discussed in *Geisinger v. Voss,* 352 F. Supp. 104 (E.D. Wis. 1972).[7] That case was a class action suit challenging a family court commissioner's *ex parte* order to vacate based upon a wife's affidavit that her husband's presence in the home threatened her legal rights. The district court denied the husband's motion for a temporary restraining order against enforcement of the *ex parte* order because no irreparable harm was demonstrated. However, the court

---

[7] One section of the Information Memorandum is entitled "Constitutional Issues Concerning the Requisite Showing to Secure an Order to Vacate." The memorandum then reflects that the drafting of sec. 813.025(2)(a), Stats., was based on an awareness of *Geisinger.* In the language of the memorandum itself, *Geisinger* "suggests that absent a showing of imminent physical harm, a court order to vacate the home without the opportunity for a hearing is constitutionally deficient." Information Memorandum 78–8 at 8.

In summarizing *Geisinger,* the Legislative Council's staff memorandum commented that no counties appeared to require the second showing, that the wife is unable to reside elsewhere, in issuing orders to vacate. The memorandum cited the opinion of a law professor that the failure to make such a showing probably would not make an order to vacate constitutionally deficient.

stated that the husband's due process challenge to the *ex parte* order did have a substantial probability of success on the merits.

Based on *Fuentes v. Shevin,* 407 U.S. 67 (1972), the *Geisinger* court reasoned that a temporary deprivation of one's home is within the protection of the due process clause of the fourteenth amendment. The court then examined the nature of the state's interest to determine whether it justified postponing a hearing until after the order to vacate had been enforced. The court concluded that it was "probable that a wife may not obtain an ex parte order ordering her husband to vacate the family household unless she demonstrates to the Family Court Commissioner's satisfaction that she will likely be subject to physical abuse and that she is unable to temporarily reside elsewhere pending a hearing." *Geisinger,* 352 F. Supp. at 111.

The constitutional issues relating to the showing required for an order to vacate were noted in the Information Memorandum 78-8 discussed by the Special Committee. While the committee's discussions do not explicitly indicate that the showing of a likelihood of violence was required in sec. 813.025(2), Stats., to save *ex parte* orders to vacate from being declared unconstitutional, the discussion of *Geisinger* in the staff memorandum and by the Special Committee is a strong indication that the requirement of such a showing has that purpose and is applicable only to *ex parte* orders.

Clearly there are many circumstances short of actual or threatened physical violence where it would be in the best interests of the child if one parent were ordered to vacate the home during the pendency of a divorce action. If sec. 813.025(2), Stats., were interpreted to limit the authority of family court commissioners and courts to make such orders to cases where domestic violence is actually or potentially present, even though the order to va-

cate were issued after notice and a hearing, it would seriously hamper courts and family court commissioners in carrying out their obligation under secs. 767.23(1n) and 767.24, Stats., to make custody decisions based on the best interests of the child. Since statutes are to be harmonized with each other, *State ex rel. Cabott, Inc. v. Wojcik,* 47 Wis. 2d 759, 766, 177 N.W.2d 828, 832 (1977), this result should be avoided if possible.

Based on the legislative history of sec. 813.025(2), Stats., we conclude that the requirement of a showing of physical violence in subsection (a) applies only to *ex parte* orders. It does not affect the authority, founded on secs. 767.23 and 767.24, Stats., of family court commissioners and courts to order a spouse to vacate the parties' home during a divorce action after notice and a hearing. This construction will allow family court commissioners and courts to give proper weight to the best interests of the child in making orders pertaining to custody after notice and a hearing, while the due process rights of the spouse ordered to vacate the home will also be protected.

In the present case, the commissioner was authorized to enter the order and did not abuse his discretion in doing so. On appeal, decisions regarding custody are afforded wide discretion, and we will not upset such decisions unless there is evidence of a clear abuse of discretion. *Pfeifer v. Pfeifer,* 62 Wis. 2d 417, 422, 215 N.W.2d 419, 421 (1974). The parties here stipulated to an agreed statement of the case in lieu of the record. The statement indicates that no challenge is being made to the sufficiency of the evidence supporting the circuit court's finding that the order to vacate is in the children's best interests. We hold that the family court commissioner's order was properly within his authority and discretion.

*By the Court.*—Order affirmed.