In the

# United States Court of Appeals
## For the Seventh Circuit

No. 05-3415

ROBERT C. O'MALLEY,

*Plaintiff-Appellant,*

*v.*

JON E. LITSCHER, *et al.,*

*Defendants-Appellees.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 04-C-0032—**Patricia J. Gorence**, *Magistrate Judge.*

SUBMITTED AUGUST 16, 2006—DECIDED OCTOBER 16, 2006

Before POSNER, KANNE, and ROVNER, *Circuit Judges.*

PER CURIAM. In the spring of 2002, Wisconsin inmate Robert O'Malley embarked on what he characterizes as a religious fast. Though he continued to drink water, he stopped eating altogether because, he says, he was using the "power of prayer and fasting" to implore God to move his former accusers to recant the testimony that led to his conviction and imprisonment for sexual assault. We are skeptical that his refusal to eat really was a religious exercise; O'Malley boasted to prison staff that this "fast," like two others before it, would win him a transfer to a different prison, and he admitted in his response to the

defendants' motion for summary judgment that he hoped to draw public attention to his assertion of innocence in order to attract free legal assistance. But the district court assumed that O'Malley's fast was rooted in sincere belief, and we will not disturb that assumption since it is not material to our disposition of the case. Whatever the reason for it, about three weeks into the fast, Brian Bohlmann, a prison doctor, concluded that O'Malley had become seriously dehydrated and would likely suffer significant harm if he did not receive hydration and nutrition within 48 hours. Bohlmann contacted legal counsel for the Wisconsin Department of Corrections, who filed an emergency petition in the state circuit court requesting authorization to force-feed O'Malley. After an ex parte hearing, the state court granted the authorization for a period of five days. Bohlmann ordered O'Malley confined in five-point restraints and supervised an intravenous feeding that began that evening. Also present was prison psychologist Barbara Seldin. About 21 hours later, Bohlmann concluded that O'Malley was out of danger and ended the forced feeding. O'Malley then began eating on his own, but he stopped again a few days after the expiration of the ex parte order. At that point legal counsel sought a permanent order authorizing medical staff to force-feed O'Malley. The state court granted the order after a hearing in which O'Malley was allowed to participate by telephone.

In 2004 O'Malley sued Bohlmann, Seldin, and four others associated with the prison under 42 U.S.C. § 1983. He claimed first, that the defendants deprived him of due process by obtaining the court orders without affording him a lawyer, and by securing the initial order on an ex parte basis. Second, he claimed that the defendants denied him due process by misrepresenting to the state court that he was dehydrated and thus duping the court into issuing the

ex parte order on the false premise that force-feeding was medically necessary. Third, O'Malley claimed Bohlmann and Seldin violated his rights under the Eighth Amendment by acting on the ex parte order without disclosing its existence and giving him a chance to "comply" voluntarily, and by continuing the intravenous feeding even after he learned about the order and promised to eat. Fourth, O'Malley claimed that the defendants, especially Bohlmann, violated the Eighth Amendment during the force-feeding because it took several attempts to place the intravenous feeding line, his restraints left marks on his skin, he was unable to use the bathroom for the full 21 hours, and he sustained burns on his back because he vomited during the procedure and was compelled to lie in the vomit. Finally, O'Malley claimed that the defendants violated his rights under the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1, by stopping his religious fast without a compelling reason.

The district court (a magistrate judge, sitting by consent) dismissed the suit in part for lack of subject-matter jurisdiction and granted summary judgment to the defendants on what remained. The court noted that part of the relief O'Malley sought was an injunction setting aside the state court's permanent order, a remedy that would run afoul of the *Rooker-Feldman* doctrine, which prohibits a federal court other than the United States Supreme Court from reviewing a state-court judgment in the absence of express congressional authorization. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291-92 (2005); *4901 Corp. v. Town of Cicero*, 220 F.3d 522, 527 (7th Cir. 2000). The district court then dismissed the suit to the extent it concerned the manner in which the ex parte and permanent orders were obtained, reasoning that these issues were inextricably intertwined with the state-court judgment

and therefore barred by *Rooker-Feldman*. The court permitted O'Malley to proceed on his Eighth Amendment and RLUIPA claims, but held that his case against four of the defendants collapsed immediately because he failed to present any evidence that those defendants were personally involved in the relevant events. The district court concluded that Bohlmann alone of the defendants was responsible for execution of the force-feeding, and explained that the undisputed evidence, which included videotapes of the procedure, established that he acted reasonably. As for the RLUIPA claim, the court held that both Bohlmann and Seldin were involved, but that neither could be held liable because they had used the least restrictive means of further- ing a compelling interest in institutional security.

On appeal O'Malley does not challenge the dismissal of any defendant except Bohlmann and Seldin, nor does he challenge the dismissal of his claims as they relate to the process of obtaining the two state-court orders. These matters therefore are waived, and we need not address them. *See Lac du Flambeau Band of Lake Superior Chippewa Indians v. Norton*, 422 F.3d 490, 502 n.4 (7th Cir. 2005); *Crestview Vill. Apartments v. United States Dep't of Hous. and Urban Dev.*, 383 F.3d 552, 555 (7th Cir. 2004). O'Malley does challenge the district court's Eighth Amendment and RLUIPA determinations. But we disagree with the district court only in that we think more of his claims are barred by *Rooker-Feldman*.

To the extent O'Malley claims that the defendants violated his rights under RLUIPA by preferring intravenous feeding over allowing him to eat, his theory is baseless. As the district court points out, the choice of methods for ending the fast did not implicate O'Malley's right to religious exercise because the asserted exercise consisted of the fast alone. O'Malley does not contend that his religious views

forbid intravenous feeding or require nutrition to be taken by mouth; if the defendants interfered with his right to religious exercise, they did so because of the *act*, not the *method*, of stopping his fast. And since the defeat of his fast was an injury caused by a state-court judgment, *Rooker-Feldman* bars any claim under RLUIPA. *See Lance v. Dennis*, 126 S. Ct. 1198, 1201 (2006) (per curiam); *Exxon Mobil Corp.*, 544 U.S. at 284; *Burke v. Johnston*, 452 F.3d 665, 667 (7th Cir. 2006). It makes no difference that O'Malley's disagreement with the state-court order is cast in the form of a civil-rights action, *see Holt v. Lake County Bd. of Comm'rs*, 408 F.3d 335, 336 (7th Cir. 2005) (per curiam); *Crestview Vill. Apartments*, 383 F.3d at 556-57; *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 557 (7th Cir. 1999); *Wright v. Tackett*, 39 F.3d 155, 157-58 (7th Cir. 1994) (per curiam); *Ritter v. Ross*, 992 F.2d 750, 753-54 (7th Cir. 1993), nor does it matter that O'Malley's RLUIPA argument was not made in the state proceedings, *see District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 483 n.16 (1983); *Long*, 182 F.3d at 554; *Garry v. Geils*, 82 F.3d 1362, 1369 (7th Cir. 1996); *Ritter*, 992 F.2d at 753-54.

The district court seems to believe that *Rooker-Feldman* is inapplicable because the defendants acted on a state-court order that was "not mandatory." We are puzzled by this since we have said repeatedly that carrying out a state court's decision is not an independent violation of the Constitution. *See Holt*, 408 F.3d at 336; *Landers Seed Co. v. Champaign Nat'l Bank*, 15 F.3d 729, 732 (7th Cir. 1994); *GASH Assocs. v. Vill. of Rosemont*, 995 F.2d 726, 727 (7th Cir. 1993); *Owens-Corning Fiberglas Corp. v. Moran*, 959 F.2d 634, 635 (7th Cir. 1992); *see also Homola v. McNamara*, 59 F.3d 647, 651 (7th Cir. 1995) ("[I]f a suit seeking damages for the execution of a judicial order is just a way to contest the order itself, then the *Rooker-Feldman* doctrine is in play"). More important, we do not share the district court's view that the

order at issue is discretionary. The order provides that "any licensed physician, or a person acting under his direction and control, may evaluate and provide to Robert O'Malley any feeding or hydration or both, by force or otherwise, which in his or her medical judgement is advisable to prevent significant risk of serious damage or death to Robert O'Malley." The order empowered the defendants to end O'Malley's fast, and more than that, it authorized the use of force to accomplish that end. The only condition was that medical judgment be exercised; the phrase "by force or otherwise," upon which O'Malley seizes, does not introduce a discretionary element. It simply recognizes the possibility that the object of the order might not resist its execution, as indeed O'Malley insists he would not have.

And we see no other reason to doubt that *Rooker-Feldman* should apply. If something in the state's procedures had prevented O'Malley from raising his constitutional challenges to the defendants' actions, we would recognize an exception from *Rooker-Feldman*. *See Holt*, 408 F.3d at 336 n.1 (per curiam); *Taylor v. Fed. Nat'l. Mortgage Ass'n.*, 374 F.3d 529, 533 (7th Cir. 2004); *Long*, 182 F.3d at 558. But there is no evidence of any such obstacle. We presume that the defendants sought to force-feed O'Malley under the authority of the Wisconsin statute providing generally for ex parte restraining orders, *see* Wis. Stat. § 813.025(2), because the orders themselves specify no governing statute or regulation and because cases from other states involving challenges to similar orders have characterized the orders as temporary restraining orders or ex parte preliminary injunctions, *see Walker v. Horn*, 385 F.3d 321, 325 (3d Cir. 2004); *People ex rel. Illinois Dept. of Corr. v. Fort*, 815 N.E.2d 1246, 1247 (Ill. App. Ct. 2004); *People ex rel. Illinois Dept. of Corr. v. Millard*, 782 N.E.2d 966, 968 (Ill. App. Ct. 2003). We are not aware of any decision holding that such an order is final—though it

might be, *see Doe v. Vill. of Crestwood*, 917 F.2d 1476, 1477 (7th Cir. 1990) (holding that temporary restraining order against holding mass during festival was appealable because it was "not properly characterized as a 'temporary' restraint"; it had effect of forbidding mass entirely). But even if it was nonfinal, O'Malley had appropriate recourse because he had the opportunity to make his constitutional arguments to the state court during his hearing on the permanent order, and that order was appealable as of right. *See* Wis. Stat. § 808.03(1); *In re Incorporation of Fitchburg*, 299 N.W.2d 199, 200 (1980) (holding "injunction order final and thus appealable"). Appeal from a final order "brings before the court all prior nonfinal judgments, orders and rulings adverse to the appellant." Wis. Stat. § 809.10(4).

Moreover, O'Malley would not have been deprived of an opportunity to challenge the first force-feeding order even if the proceedings had ended there. If he had not stopped eating again, the defendants might not have followed through with the permanent order. But Wisconsin did not require him to wait and see. State law provides for permissive appeal of nonfinal orders within 14 days. *See* Wis. Stats. §§ 808.03(2), 809.50(1); *see also Sandy v. Sandy*, 316 N.W.2d 164, 168 (Wis. Ct. App.) (noting that under earlier version of Wis. Stat. § 813.025(2) "orders were issued ex parte with an opportunity to petition for review"), *aff'd*, 326 N.W.2d 761 (1982). That being so, it does not matter that the order was ex parte. *See Rosenfeld v. Egy*, 346 F.3d 11, 12-13, 18-19 (1st Cir. 2003); *Mandel v. Town of Orleans*, 326 F.3d 267, 272 (1st Cir. 2003) (applying *Rooker-Feldman* to ex parte order because plaintiff "was formally a party to the enforcement proceeding and was free to ask the state court to undo or revisit its enforcement order on constitutional or other grounds; she was not free to secure its effective invalidation by a federal judge"); *Goodman v. Sipos*, 259 F.3d 1327, 1334-

35 (11th Cir. 2001) (noting that "plaintiffs had a reasonable opportunity to bring their constitutional challenges to the veracity of Sipos' affidavit and the propriety of the state court's ex parte proceeding in the state court."); *Jordahl v. Democratic Party of Virginia*, 122 F.3d 192, 203 n.11 (4th Cir. 1997) (finding *Rooker-Feldman* applicable because the plaintiff "may challenge the state court's order in the Virginia Supreme Court, the proper avenue for such an appeal").

We also hold, applying the same analysis, that *Rooker-Feldman* bars O'Malley's Eighth Amendment claim that it was a violation of his rights to force-feed him at all since he was willing to eat in response to the state court's order. We interpret this claim, which the district court did not distinguish from O'Malley's other Eighth Amendment claims, as intended to invoke the Eighth Amendment excessive-force standard. That standard demands an inquiry "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically cause harm." *Harper v. Albert*, 400 F.3d 1052, 1065 (7th Cir. 2005) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). O'Malley contends that Bohlmann and Seldin force-fed him, not because they believed it was medically necessary, but because they wanted to punish him for causing them inconvenience through his fast. But the decision of the state court was precisely that feeding O'Malley by force was necessary under the circumstances, and so the claim runs straight into *Rooker-Feldman*.

O'Malley argues that he had a right to an opportunity to resume eating voluntarily before the state-court order was executed, and that there is a genuine issue of material fact whether he was deprived of that right when the defendants first failed to tell him the order existed, and later

refused to release him upon his promise to eat. But we will not entertain the multiple questions of fact implicit in these arguments—whether the allegation that O'Malley was not told about the order is true (the defendants dispute it); whether the defendants would have given him a chance to eat if they had received his promise to eat before he was restrained; whether a reasonable person would have been compelled to believe his promise at any time; and whether it would have been prudent or safe to allow him to eat—because we can see no basis for his argument that he had a right to thwart execution of the order by eating voluntarily once the order was made known to him. The "fail[ure] to stop," as the district court terms it, seems to us merely the other side of the coin from carrying out the state court's order. O'Malley points to *Walker*, 286 F.3d at 710, where the district court allowed the inmate-plaintiff to proceed past summary judgment on an Eighth Amendment claim because it found a genuine question of material fact concerning whether he had agreed to eat in order to avoid force-feeding. The Third Circuit, however, did not even consider the application of *Rooker-Feldman* to the Eighth Amendment claim, so we do not find its opinion helpful on this point.

We turn now to O'Malley's claims involving the execution of the order to force-feed. These, we agree, are not barred by *Rooker-Feldman*, but we also agree with the district court that no reasonable factfinder could have found in O'Malley's favor. The fact that he was stuck three times while the nurse was placing his IV line does not establish use of excessive force. An Eighth Amendment claim cannot be predicated on a *de minimis* use of force. *See Fillmore v. Page*, 358 F.3d 496, 504 (7th Cir. 2004). Nor does the application of five-point restraints constitute excessive force in this context. The defendants presented evidence at summary judgment that

O'Malley promised to "fight to the death" to resist being fed intravenously, and O'Malley himself concedes that he told staff he would pull the tubes out if they attempted to force-feed him. Further, when the defendants first warned him of the impending force-feeding after obtaining the order, he had what he says was a post-traumatic-stress-disorder reaction and scratched up his forearms. He later claimed that he resisted only because he thought the defendants meant to force-feed him illegally, but the defendants could not be expected either to anticipate, or if they anticipated, to believe such a claim. Moreover, with respect to his claim that the restraints were too tight, we note that they were checked and adjusted by a nurse immediately after they were applied, and that they were adjusted at his request several times over the 21-hour period. O'Malley has submitted photographs of marks on his skin that he contends were caused by the restraints, but the injury is not so severe as to give rise to a genuine question of material fact whether the restraints were applied to punish rather than restrain. In addition, we do not think it unreasonable for the defendants to have refused to let him get up to use the bathroom. We note that they did not simply ignore his need to urinate. They offered him a urine bottle, and ultimately, when he persisted in his claim that he could not urinate in that position, relieved him through use of a catheter.

O'Malley's strongest claim is that Bohlmann was deliberately indifferent to his suffering from lying in his own vomit for several hours; he has submitted a photograph of what appear to be burns at the base of his spine. Bohlmann, in his affidavit in support of his motion for summary judgment, stated that the marks "were in the nature of a minor irritation or sunburn," but like the district court, we are willing to assume that the pain from these burns constitutes an "objectively serious medical condition," one

requirement of an Eighth Amendment failure-to-treat claim. *See Johnson v. Snyder*, 444 F.3d 579, 584 (7th Cir. 2006). However, O'Malley presented no evidence concerning the second element of his claim: that Bohlmann showed deliberate indifference to his condition. *See id.*; *Norfleet v. Webster*, 439 F.3d 392, 395 (7th Cir. 2006).

Deliberate indifference is "essentially a criminal recklessness standard, that is, ignoring a known risk." *Johnson*, 444 F.3d at 585 (citation and quotation marks omitted). But Bohlmann was not present during the early morning hours when O'Malley began to vomit; nor does he appear to have failed in any duty to instruct others to care for O'Malley. The videotapes show that the guards were reasonably responsive to O'Malley's calls for help, and that attendants wiped him down several times. Bohlmann admitted at summary judgment that he received a report by phone at about 4:30 a.m. that O'Malley had vomited and was asking to be released from the restraints. He said that he refused this request because he did not consider it "medically appropriate," but that he did order that O'Malley be given antacids and a medication to suppress nausea. And the videotapes show that the medication was given. Bohlmann did not say, and there is no evidence, that he refused a request to have O'Malley's back wiped off. In fact, O'Malley's back did not appear to cause him significant distress until after 5 a.m. At that point, he did have to wait about an hour and a half for attendants to arrive and lift him up so his back could be wiped; he was told by a guard that the delay was because of a shift change. But we cannot see how this amounts to deliberate indifference on Bohlmann's part.

Therefore the district court's judgment is modified to make it jurisdictional with respect to the RLUIPA claim and

the claim that force-feeding at all was a use of excessive force, and as so modified, is AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*