**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 12, 2017[*]
Decided May 15, 2017

**Before**

DIANE P. WOOD, *Chief Judge*

JOEL M. FLAUM, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

No. 16-2639

| | |
|---|---|
| PEDRO DIAZ, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Central District of Illinois. |
| | |
| *v.* | No. 13-cv-1136 |
| | |
| SALVADOR GODINEZ, et al., | James E. Shadid, |
| *Defendants-Appellees*. | *Chief Judge*. |

**O R D E R**

Pedro Diaz appeals from the grant of summary judgment for the defendants in this suit under 42 U.S.C. § 1983 claiming deliberate indifference to his chronic back pain. Diaz went without pain medication for four months after being transferred to Pontiac Correctional Center because employees there refused to honor his prescription for

---

[*] We have agreed to decide this case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

ibuprofen, confiscated his supply of the drug, and ignored his requests for a sick-call appointment to obtain a new prescription. We conclude that Diaz presented sufficient evidence for a jury to find in his favor as to a medical technician responsible for scheduling appointments, but otherwise affirm the judgment.

Diaz has a documented history of chronic back pain due to mild degenerative changes in the spine (commonly known as osteoarthritis). In May 2011, shortly before he was transferred to Pontiac, a doctor at Menard Correctional Center issued Diaz a one-year prescription for ibuprofen. Diaz arrived at Menard carrying a week's supply on his person, and he had enough ibuprofen for two more months in his property box. After ten days at Pontiac, Diaz received his property box and discovered that his ibuprofen was missing.

Diaz immediately began writing requests to the infirmary staff asking for his medication. A few days later, a Correctional Medical Technician, Kristi Eshleman, came to his cell and said he wouldn't be getting his ibuprofen. In response, Diaz filed an emergency grievance explaining that he had been prescribed ibuprofen before leaving Menard, that a medical technician had told him he would not be receiving the medication he brought with him, and that his old prescription would not be honored. Diaz's grievance also conveyed that he had not been examined at Pontiac and was suffering pain and discomfort. His counselor, Jeff Eilts, forwarded that grievance to the infirmary staff two weeks later. The warden at that time, Randy Pfister, marked the grievance as not an emergency. Two more weeks passed before the healthcare administrator, Teresa Arroyo, issued a memorandum to Diaz explaining that his medical chart had been reviewed, that prescriptions issued at other prisons are not automatically honored when inmates transfer to Pontiac, and that Diaz must "put in for Sick Call" to get his ibuprofen prescription renewed. Arroyo instructed Diaz to direct his medical concerns to "the cell house CMT who will evaluate him for treatment or refer him if appropriate." Alternatively, Arroyo wrote, Diaz could "send a yellow 'Medical Request' slip" to the infirmary. A carbon copy of this memorandum was sent to the Medical Director, Dr. Andrew Tilden.

Yet according to Diaz's version of events, which we must credit in reviewing the adverse ruling at summary judgment, *Rasho v. Elyea*, 850 F.3d 318, 324 (7th Cir. 2017), he had requested ibuprofen from CMT Eshleman continuously from the moment he first learned that his supply from Menard would not be returned. Diaz finally was scheduled for sick call in November 2011—more than four months after arriving at Pontiac. To obtain that appointment, Diaz had remitted a mandatory $5 co-pay to Eshleman and left

with a limited supply of ibuprofen. Then in March 2012, after that supply was exhausted, Diaz tendered another $5 co-pay to CMT Eshleman listing three distinct ailments (back pain, heartburn, and ringing in his ears). But she refused to schedule another appointment because, she told Diaz, he must submit a co-pay for each ailment. Eshleman had not made a similar demand when Diaz listed multiple ailments before his November appointment, so Diaz submitted another grievance. Arroyo, the healthcare administrator, responded that "in this instance" Diaz would be allowed to pay just $5 to cover an appointment for multiple health issues. At that appointment in May 2012, he again was prescribed ibuprofen. Later that month he transferred to another prison.

When Diaz brought suit, he included as defendants the director of the Department of Corrections, Warden Pfister, Counselor Eilts, and several "Doe" placeholders. After several months of discovery, Diaz sought to amend his complaint to add additional defendants and to substitute CMT Eshleman and healthcare administrator Arroyo for existing placeholders. The district court declined to allow more defendants but did approve the substitution of Eshleman (and others). Oddly, though, rather than substitute Arroyo for a Doe defendant, the court named Medical Director Tilden (a Wexford Health Sources employee). Months later, when Diaz wanted to identify the Doe defendants accused of confiscating his ibuprofen while inventorying his property box at intake, the court refused, reasoning that the request had been too long after the suit was filed and that Diaz would have discovered the names sooner except that he had misstated the date of the seizure in his disclosure request.

Diaz's theory is that his chronic back pain is a serious medical need that defendants knew of and disregarded. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Perez v. Fenoglio*, 792 F.3d 768, 776–77 (7th Cir. 2015). At summary judgment, the district court did not analyze whether Diaz's back pain is a serious medical need because, the court reasoned, Diaz lacks evidence that any defendant consciously deprived him of pain medication. The court reasoned that the DOC director, Pontiac's warden, Counselor Eilts, and other administrators did not personally participate in the alleged deprivation "merely by participating in the grievance process." The court similarly reasoned that Dr. Tilden could not be liable, citing his undisputed affidavit that he never met Diaz and does not review inmate grievances and thus would not have been subjectively aware of the medication issue. The court also accepted the assertion of the DOC defendants that Diaz had not followed the appropriate procedure to obtain the ibuprofen he wanted after being told that his prescription from Menard would not be honored at Pontiac.

On appeal, the DOC defendants do not clearly contest that Diaz suffers from a serious medical condition. The Wexford defendant, Dr. Tilden, renews his contention that back pain treatable with an over-the-counter pain reliever is not an objectively serious medical need, but we reject that argument. As we have explained repeatedly, turning a blind eye to a prisoner's complaints of readily treatable pain can constitute an Eighth Amendment violation, even if the condition is not life-threatening and the failure to treat does not exacerbate the condition. *See Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012). We even have acknowledged that chronic arthritis pain is a serious medical need, *Norfleet v. Webster*, 439 F.3d 392, 394–95 (7th Cir. 2006), as are other conditions that cause serious or chronic pain, *see Miller v. Campanella*, 794 F.3d 878, 880 (7th Cir. 2015) (severe heartburn from gastroesophageal reflux disease); *Edwards v. Snyder*, 478 F.3d 827, 831 (7th Cir. 2007) (dislocated finger); *O'Malley v. Litscher*, 465 F.3d 799, 805 (7th Cir. 2006) (minor burns); *Johnson v. Doughty*, 433 F.3d 1001, 1003–04, 1010 (7th Cir. 2006) (hernia); *Greeno v. Daley*, 414 F.3d 645, 649–51 (7th Cir. 2005) (heartburn and vomiting); *Murphy v. Walker*, 51 F.3d 714, 719 (7th Cir.1995) (pain from head injury). And, as we also have explained, the lower the cost of the treatment requested, the less need has to be shown. *Ralston v. McGovern*, 167 F.3d 1160, 1162 (7th Cir. 1999). Here, the minimal cost of the ibuprofen deemed necessary by the medical staff at Menard but withheld at Pontiac lessens Diaz's burden of showing that the pain attributable to his osteoarthritis is a serious need. Pain is a "uniquely subjective experience," and it is not appropriate to conclude at summary judgment that nontrivial pain alleged by an inmate is not deserving of treatment. *See Cooper v. Casey*, 97 F.3d 914, 917 (7th Cir. 1996). Moreover, the prescription Diaz received from Menard is "evidence that he really did have back pain." *Withers v. Wexford Health Sources, Inc.*, 710 F.3d 688, 689 (7th Cir. 2013).

Moving on to whether there is evidence that any defendant knowingly disregarded his untreated pain, Diaz argues that Dr. Tilden can be liable because, according to Diaz, his role as Pontiac's medical director gives him final say about honoring prescriptions from other facilities and about who will be seen at sick call. But Diaz did not produce evidence supporting his assumptions about Dr. Tilden's duties, and Dr. Tilden attested that he does *not* schedule patients for sick call or review existing prescriptions for incoming inmates. That work, it appears, is handled by the infirmary staff, and Dr. Tilden cannot be accountable simply because of his position as the facility medical director. *See Kinslow v. Pullara*, 538 F.3d 687, 692 (7th Cir. 2008) (explaining that there is no respondeat superior liability for claims under § 1983); *Garvin v. Armstrong*, 236 F.3d 896, 898–99 (7th Cir. 2001) (stating that medical director cannot be held vicariously liable for actions of nursing staff). Diaz further argues that, in stating that Dr. Tilden does not "review" inmate grievances, the district court exaggerated the

physician's attestation that he does not *"respond"* to inmate grievances. Diaz makes a fair point, but it gets him nowhere. Even if Dr. Tilden was reviewing grievances, it was not his role to schedule appointments for inmates. *See Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) (explaining that prisoners are not "entitled to insist that one employee do another's job"). And, if he reviewed *Diaz's* grievance, then Dr. Tilden also knew that healthcare administrator Arroyo had handled the matter already by instructing Diaz to request a medical appointment through the CMT or by submitting a yellow request slip. Arroyo's response to Diaz would not have put Dr. Tilden on notice that Diaz remained unsatisfied.

Diaz makes a similar pitch about the warden and other DOC administrators, arguing that the grievance process made them aware that he was not getting pain medication and yet they failed to act. But prison administrators who are not part of the medical team have acted appropriately if they have referred the issue to medical staff who could be expected to address it. *See Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011); *Greeno*, 414 F.3d at 656–57. Diaz's grievance was forwarded to Arroyo, so there's no basis for his contention that these administrators deliberately disregarded his need for care. Moreover, nothing in the grievance would put the administrators on notice that Diaz struggled to obtain an appointment even after following the proper procedure.

In contrast, Diaz's next argument—that summary judgment should not have been granted to CMT Eshleman—is substantial. The district court reasoned that Eshleman cannot be liable for not scheduling an appointment for Diaz when he could have made an appointment himself by submitting a yellow request slip. But as Diaz points out, the *other* method for scheduling an appointment is to ask the medical technician on duty, and Eshleman has never disputed that *she* was the technician on duty or that Diaz asked *her* repeatedly to make him an appointment so that his ibuprofen could be restored. Indeed, at summary judgment, CMT Eshleman offered no defense to Diaz's Eighth Amendment claim except to falsely accuse Diaz of *refusing* to submit a yellow request slip because he didn't want to pay the $5 co-pay for a medical appointment. At his deposition Diaz did acknowledge that he was frustrated to learn that healthcare staff at Pontiac expected him to pay $5 to replace a year-long prescription given to him at Menard the previous month. But Diaz went on to say that he never once refused to authorize payment when told he must do so in order to receive care. Moreover, reading Diaz's testimony in the light most favorable to him, CMT Eshleman continued to stonewall him when he sought a renewal of the ibuprofen prescription the following March. When Diaz asked for an appointment because of multiple ailments, Eshleman inexplicably demanded that he first pay $5 per ailment until she was overruled after he

filed a grievance. Taken together, the evidence is enough for a jury to find that Eshleman was indifferent to Diaz's back pain and impeded his efforts to obtain relief. We therefore remand for trial as to her.

All that remains is Diaz's contention that, despite the late date, he should have been permitted to proceed against the Pontiac employees who confiscated the ibuprofen found in his property locker. Diaz had earlier misidentified those employees because, during discovery, he had given counsel for the DOC defendants the date of his *arrival* at Pontiac, not the date that his property was inventoried. We doubt that the defendants could have been misled by Diaz's mistake, since it is obvious from his discovery request that he wanted the names of the employees who inventoried *his* property at intake, on whatever day that inventory occurred. He had no way to know the correct date, but the defendants did. Nevertheless, we cannot see how Diaz was harmed. An employee who follows the prison's policy of confiscating prescription drugs during a transfer is not personally liable for deliberate indifference. Diaz does not allege that those individuals were aware of his chronic back pain or his prescription for ibuprofen, let alone that they consciously disregarded a risk to his health.

We have reviewed Diaz's other contentions, and none has merit. The grant of summary judgment for defendant Eshleman is VACATED and the case is REMANDED for further proceedings on the claim of deliberate indifference against her. In all other respects the judgment is AFFIRMED.