**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 21-3269

_____

ESTATE OF RONALD SINGLETARY;
AMINAH SINGLETARY; LATIESHA SINGLETARY, INDIVIDUALLY AND AS
ADMINISTRATOR OF THE ESTATE OF RONALD SINGLETARY

v.

CITY OF PHILADELPHIA; POLICE OFFICER ROBERT SCHUTTE;
CHARLES RAMSEY; POLICE OFFICER MICHAEL NAVEDO;
RICHARD ROSS; POLICE OFFICER JENNIFER GRESHAM;
POLICE OFFICER OWEN SCHAEFFER

Police Officer Robert Schutte; Police Officer Michael Navedo;
Police Officer Jennifer Gresham; Police Officer Owen Schaeffer,

Appellants

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D. C. No. 2-19-cv-00190)
District Judge: Honorable John M. Younge

_____

Argued on January 12, 2023
Before: JORDAN, PHIPPS and ROTH, Circuit Judges
(Opinion filed: August 10, 2023)

Craig R. Gottlieb                    (**ARGUED**)
City of Philadelphia
Law Department
1515 Arch Street, 17th Floor
Philadelphia, PA 19102

        Counsel for Appellants

Christopher Markos         (**ARGUED**)
Williams Cedar
One South Broad Street
Suite 1510
Philadelphia, PA 19107
       Counsel for Appellees

————————

OPINION[*]

————————

**ROTH**, Circuit Judge

Ronald Singletary was fatally shot by law enforcement in a bedroom of his Philadelphia boarding house. His personal representatives filed state and federal civil rights claims against numerous parties, including four police officers (Officers). The Officers ask us to review the District Court's denial, at summary judgment, of their entitlement to qualified immunity. For the following reasons, we lack jurisdiction of this appeal.

## I.     Factual and Procedural Background

Philadelphia Police Policy Directive 10.7 is intended to "help identify a 'barricaded person,' hostage taker, or Severely Mentally Disabled Person (SMDP) and instruct police personnel in the proper tactics and procedures in order to remove such an individual and safeguard the personal well-being of all concerned."[1] The policy establishes that a person

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] JA009 (citing Compl. ¶ 19; Ex. A to Pl.'s Compl.).

2

who "has indicated by action or implication that he/she may have a weapon and refuses to cooperate with police commands" is generally considered a barricaded person, and sets forth procedures for police to follow in this situation.[2]

On May 12, 2017, police were called to Ronald Singletary's boarding house to arrest him for violating a protective order obtained against him by a companion.[3] Upon arrival, Officer Schutte found the companion outside, and observed Singletary inside at an upstairs window, from which Singletary called down "that Officer Schutte would 'have to call SWAT and all the cops . . . because he's not going without a fight.'"[4] The companion informed Schutte that Singletary had knives in the room, and Schutte called additional officers to the scene. Officers Schutte and Navedo entered the residence and went upstairs, where they observed Singletary enter a bedroom with a knife. Meanwhile, Officers Gresham and Schaeffer arrived and followed Schutte and Navedo up the stairs. Schutte then kicked in Singletary's bedroom door, Navedo tased Singletary, and Schutte fatally shot him. None of the Officers designated the situation as a barricade per Policy Directive 10.7. A Philadelphia Police Department Lieutenant assigned to the Internal Affairs Division later testified that, under the policy, at least one Officer should have done so.

The parties dispute the particulars of these events, and the Officers—the only eyewitnesses to the interactions with Singletary—provided contradictory testimony. As the District Court observed, "[t]he Defendant Officers here offer markedly different

---

[2] JA009 (citing Compl. ¶ 19; Ex. A to Pl.'s Compl.).

[3] Because we write primarily for the parties, we discuss the facts and proceedings only to the extent necessary to resolve this matter.

[4] JA007 (quoting ECF No. 50-4 at 17).

3

accounts of what happened during the pivotal seconds before Singletary's death."[5] Crucially, the Officers presented conflicting accounts of how and why they stormed the bedroom and whether Singletary "lunged" at them with a knife after Officer Schutte kicked in the door.[6]

Singletary's personal representatives (the Singletarys) filed claims against numerous parties. Relevant to this appeal, these included federal excessive force claims against the Officers.[7] On the defendants' motion for summary judgment, the District Court found "the record reveals a genuine dispute of material facts as to whether the Defendant Officers used excessive force."[8] These material facts included "whether the Defendant Officers' failure to conform to established police policy and storm the door, when Singletary was neither a flight risk nor a risk to others, was a proximate cause of Singletary's shooting,"[9] and whether Ronald Singletary lunged at the Officers with a knife. The court found that these issues of material fact precluded summary judgment on qualified immunity, where the officers "knowingly violated police policy [and] there are significant factual inconsistencies that call into question the application of force and whether the

---

[5] JA034.

[6] JA007–08, 10–11.

[7] The Singletarys commenced this action in the Philadelphia Court of Common Pleas by Writ of Summons, and the defendants removed it to federal court. With respect to the Officers, the Singletarys sued under 42 U.S.C. § 1983, alleging constitutional violations based on use of excessive force and state-created danger. They additionally brought claims for assault and battery under Pennsylvania state law. The Singletarys alleged an additional federal excessive force claim against Officer Schutte alone. The District Court granted partial summary judgment to the Officers on the Singletarys' state-created danger and failure to train claims.

[8] JA024.

[9] JA024.

4

Defendant Officers were acting in self-defense."[10]   Accordingly, the court found the

Officers were not entitled to qualified immunity on the excessive force claims as a matter

of law.  The Officers appealed.

## II. Discussion

The District Court had jurisdiction under 28 U.S.C. § 1331.  Under the collateral

order doctrine,[11] pursuant to 28 U.S.C. § 1291, we may exercise limited jurisdiction over

an interlocutory order "to the extent that [the order] turns on an issue of law."[12]  Therefore,

we may review "whether the set of facts identified by the district court is sufficient to

establish a violation of a clearly established constitutional right," but not "whether the

district court correctly identified the set of facts that the summary judgment record is

sufficient to prove."[13]  We recognize only a narrow exception to this limited jurisdiction in

such cases:  "[W]here the trial court's determination that a fact is subject to reasonable

---

[10] JA038.

[11] The collateral order doctrine maintains that "an interlocutory order is immediately appealable as a 'final decision' within the meaning of § 1291 if it '[1] conclusively determine[s] the disputed question, [2] resolve[s] an important issue completely separate from the merits of the action, and [3] [is] effectively unreviewable on appeal from a final judgment.'" *Dougherty v. Sch. Dist. of Phila.*, 772 F.3d 979, 985–86 (3d Cir. 2014) (alterations in original) (quoting *Johnson v. Jones,* 515 U.S. 304, 310 (1995)).

[12] *Id.* at 986 (citing *Mitchell v. Forsyth,* 472 U.S. 511, 526–530 (1985)).

[13] *Id.* (quoting *Ziccardi v. City of Phila.,* 288 F.3d 57, 61 (3d Cir. 2002)); *see also Williams v. City of York*, 967 F.3d 252, 257 (3d Cir. 2020) (asserting this Court "lack[s] jurisdiction to review the District Court's denial of qualified immunity when 'the pretrial record sets forth a "genuine" issue of fact for trial'") (quoting *Johnson*, 515 U.S. at 320); *Monteiro v. City of Elizabeth,* 436 F.3d 397, 405 (3d Cir. 2006) ("[W]hen qualified immunity depends on disputed issues of fact, those issues must be determined by the jury.").

5

dispute is *blatantly and demonstrably false*, a court of appeals may say so, even on interlocutory review."[14]

The Officers argue that this exception to our limited jurisdiction applies here. Specifically, the Officers contend that the District Court reached the "factual conclusion" that Singletary did not lunge at the Officers with the knife, and that this conclusion was "blatantly" wrong because the Singletarys admitted the lunge in their Complaint and Local Rule 56.1 statement.[15] In light of this purported concession, the Officers argue that the trial court's contrary determination—that the fact of the lunge remains at issue—is blatantly and demonstrably false.

This argument is unavailing.[16] The text of Federal Rule of Civil Procedure 56, which governs summary judgments, implies that a district court is not bound by the parties' factual stipulations when those stipulations are contradicted by the record. As an initial matter, nothing in the rule states that a district court is so bound; rather, the rule requires that the moving party "show[]," i.e., convince, the district court that "there is no genuine

---

[14] *Williams*, 967 F.3d at 258 (quoting *Blaylock v. City of Phila.*, 504 F.3d 405, 414 (3d Cir. 2007)).

[15] Officers' Br. at 20, 23–25; *see* JA 52–53 (Officers' Statement of Undisputed Material Facts ¶ 44–53); JA 57–58 (Singletarys' Statement in Opposition ¶ 44–53). The Officers also cite a line from the Singletarys' Complaint, which the Officers construe as an admission of the same. *See* JA 372 (Plaintiffs' Complaint ¶ 49). This line is ambiguously drafted, however, and could be read to plead only that the Officers *claimed* Singletary lunged.

[16] We observe that the Officers appear to misstate the District Court's conclusions. The court did not make a "determination that Singletary did not lunge." Officers Br. 2. Rather, consistent with its obligations at summary judgment, the court found a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party (i.e., the Singletarys) on this issue, viewing the facts and drawing all reasonable inferences in the non-moving party's favor. *See* JA017, 24, 25, 28.

dispute as to any material fact[.]"[17]  Additionally, the rule provides that "[t]he court need

consider only the cited materials, but it may consider other materials in the record."[18]

Because Rule 56 permits the District Court to review the entire record, and because nothing

in the rule prevents the District Court from discounting a party's stipulation when it is

contradicted by the record, we should not impose an extra-textual limitation on Rule 56

that would circumscribe the District Court's discretion.  Indeed, this case underscores the

advantage of allowing the district court such leeway, as the decedent is unavailable to

contest the Officers' factual account.[19]

---

[17] Fed. R. Civ. P. 56(a).  *See Doeblers' Pennsylvania Hybrids, Inc. v. Doebler*, 442 F.3d 812, 820 n.6 (3d Cir. 2006) ("'[A] district court may not rely solely on the statement of undisputed facts' . . . . This admonition applies with equal force to this Court on appeal.") (quoting *Vermont Teddy Bear Co., Inc. v. 1–800 Beargram Co.,* 373 F.3d 241, 244 (2d Cir. 2004)).

[18] Fed. R. Civ. P. 56(c)(3).

[19] As the Dissent notes, we have long recognized that judicial admissions "are concessions in pleadings or briefs" and "bind the party who makes them."  *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 211 & n.20 (3d Cir. 2006) (collecting cases).  But we also gave some meaningful context and nuance to that rule when we said that, where there is "no evidence contradicting [an] admission," and "no compelling reason" to contradict the plain meaning of an admission, a district court cannot contradict the admitted fact, and the admission necessarily "narrows the trial issues in the case[.]"  *Airco Indus.  Gases, Inc. Div. of the BOC Grp., Inc. v. Teamsters Health & Welfare Pension Fund of Phila. & Vicinity*, 850 F.2d 1028, 1036–37 (3d Cir. 1988).  Our dissenting colleague would read our precedent as saying that an ill-chosen word in court filings overcomes any and all other evidence in the factual record, no matter how compelling.  We do not believe our precedent so rigid that it requires that result.  On the contrary, as suggested in *Airco*, if a district court finds a compelling reason to discount a party's admission, the court should be free to do so.   Here, the District Court found evidence supporting a reasonable suspicion that the Officers attempted to contrive a false account of what transpired in Singletary's bedroom before Officer Schutte shot Singletary.  We do not mean to imply that such a suspicion will turn out to be well-founded; only that it is not unreasonable on this record and so is a sufficient basis for the District Court to look past the admission.

Such is the case here.  As the District Court explained, the record reflects the Officers' conflicting testimonies concerning Ronald Singletary's actions prior to the shooting.  Viewed in the light most favorable to the Singletarys, as proper at summary judgment, the Officers' testimony does not clearly support the conclusion that Singletary lunged at them with a knife.  Moreover, we advise district courts to "be cautious on summary judgment to 'ensure that the officer is not taking advantage of the fact that the witness most likely to contradict his story—the person shot dead—is unable to testify. [T]he *court may not simply accept* what may be a selfserving account by the officer.'"[20] Thus, the District Court exercised appropriate caution by reviewing the record independently rather than facially accepting the noted assertions.  Because the record does not show that the District Court's finding with respect to the lunge was blatantly and demonstrably false, we lack jurisdiction to review it.

The Officers' remaining arguments assume that we find Singletary lunged at the Officers with a knife.  Because such a finding is beyond our jurisdiction, we neither consider nor address their remaining arguments.

### III.    Conclusion

For the foregoing reasons, we will dismiss the Officers' appeal.

---

[20] *Abraham v. Raso*, 183 F.3d 279, 294 (3d Cir. 1999) (alteration in original) (emphasis added) (citation omitted) (quoting *Scott v. Henrich,* 39 F.3d 912, 915 (9th Cir. 1994)).

*Estate of Ronald Singletary v. City of Philadelphia*, No. 21-3269
PHIPPS, *Circuit Judge*, dissenting.

In declining jurisdiction over this appeal, the Majority Opinion validates the District Court's disregard of two judicial admissions made by the Estate of Ronald Singletary. But the District Court erred in overriding those admissions, and such an error does not shield the denial of qualified immunity from appellate review.

Both admissions unequivocally confirm the same underlying fact: that Singletary lunged, with a knife, at officers attempting to arrest him for violating a protection from abuse order, which was issued based on allegations that he had choked a woman. First, the Estate's own complaint alleges that "[Singletary] then walked toward Officer Navedo and *lunged with the knife*. Officer S[c]hutte then shot Singletary twice." Compl. ¶ 48 (App. 372) (emphasis added). Second, the Estate admitted the paragraph in the officers' statement of material facts to the same effect:

> Defendants' Statement, Paragraph 49:
> [Singletary] then *charged at the officers with the knife* in an overhead motion.

> Plaintiffs' Response, Paragraph 49:
> Admitted.

*See* Defs.' Rule 56.1 Statement ¶ 49 (App. 52) (emphasis added); Pls.' Rule 56.1 Resp. ¶ 49 (App. 58).

This Circuit has long recognized that judicial admissions are "binding." *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 211 & n.20 (3d Cir. 2006) (collecting cases). Statements in pleadings are judicial admissions by the party making the statement. *See Parilla v. IAP Worldwide Servs., VI, Inc.*, 368 F.3d 269, 275 (3d Cir. 2004) (explaining that no factfinding was necessary because the plaintiff "conceded" the dispositive facts "in her complaint"); *see also* 1 Kenneth S. Broun et al., *McCormick on Evidence* § 257

1

(8th ed. July 2022 update) (explaining that statements in pleadings "are conclusive" as judicial admissions). So are factual admissions used as evidence at summary judgment. *See Airco Indus. Gases, Inc. Div. of the BOC Grp., Inc. v. Teamsters Health & Welfare Pension Fund of Phila. & Vicinity*, 850 F.2d 1028, 1037 (3d Cir. 1988) ("This admission is not merely another layer of evidence, upon which the district court can superimpose its own assessment of weight and validity."); *see also Federal Trial Objections* § J30 (7th ed. Oct. 2020 update) ("[A] judicial admission is binding on the party making it and cannot be subsequently contradicted at trial or on appeal.").

This Circuit has previously relied on judicial admissions to decide excessive force cases. *See Williams v. City of York*, 967 F.3d 252, 262–63 (3d Cir. 2020) (immunizing officers in excessive force case where, "most importantly, in [the arrestee's] summary judgment briefing, she conceded she cannot establish that any of the Officers were personally involved in the violations"). Every other federal appellate court with jurisdiction over such claims[1] has done the same – sometimes using a victim's admission against the victim, sometimes using a law enforcement officer's admission against the officer.[2] Thus, it was error for the District Court to override the two judicial admissions

---

[1] *See* 28 U.S.C. § 1294; *cf. id.* § 1295 (defining the appellate jurisdiction of the Federal Circuit).

[2] *See Estate of Rahim v. Doe*, 51 F.4th 402, 407, 412, 414 n.12 (1st Cir. 2022) (relying on counsel's admission that the deceased "had a knife"); *Jeffreys v. City of New York*, 426 F.3d 549, 555 n.2 (2d Cir. 2005) (relying on arrestee's "multiple admissions" that "were neither ambiguous, confusing, nor incomplete"); *Pegg v. Herrnberger*, 845 F.3d 112, 120 & n.5 (4th Cir. 2017) (relying on response to request for admission that "Admitted" resistance to arrest); *Linicomn v. Hill*, 902 F.3d 529, 540 & n.9 (5th Cir. 2018) (relying on "admission of the facts" submitted in response to the Answer); *Jones v. City of Elyria*, 947 F.3d 905, 917 (6th Cir. 2020) (relying on officers' "own admission" that they tackled, struck, and tased the victim); *O'Malley v. Litscher*, 465 F.3d 799, 805 (7th Cir. 2006) (relying on inmate's "conce[ssion] that he told staff he would [resist]"); *McManemy v. Tierney*, 970 F.3d 1034, 1038 (8th Cir. 2020) (relying on arrestee's "admissions," which would "take on central importance"); *Lolli v. Cnty. of Orange*,

2

and conclude that without those admissions there was a genuine dispute of material fact about excessive force.

The Majority Opinion recasts my position as being that "an ill-chosen word in court filings" could "overcome[] any and all other evidence in the factual record, no matter how compelling." Maj. Op. at n.19. But that is not the case here. The admitted fact had a solid grounding in the record as the four officers all agreed: Singletary lunged with a knife.[3] Thus, this case is not about an inadvertent mistake that should not receive dispositive weight; it involves nearly identical judicial admissions made on two separate occasions in court filings upon which courts are expected to rely.

Because the two admissions eliminate any dispute of material fact and place this matter in the heartland of qualified immunity, the District Court should have entered summary judgment in the officers' favor. *See City & Cnty. of San Francisco v. Sheehan*, 575 U.S. 600, 605–06, 613 (2015) (immunizing officers applying deadly force in bedroom where the deceased threatened them with a knife); *Reese v. Cnty. of*

---

351 F.3d 410, 418 (9th Cir. 2003) (relying on supervisory officer's admission that "he observed the deputies struggling with [the] victim"); *Hinton v. City of Elwood*, 997 F.2d 774, 781 (10th Cir. 1993) (relying on arrestee's "admi[ssion]. . . that he was actively and openly resisting . . . attempts to handcuff him, even to the extent of biting the officers"); *Mobley v. Palm Beach Cnty. Sheriff Dep't*, 783 F.3d 1347, 1356 (11th Cir. 2015) (relying on arrestee's "conce[ssion] that he had refused to surrender his hands"); *DeGraff v. District of Columbia*, 120 F.3d 298, 300 (D.C. Cir. 1997) (relying on arrestee's admission at a deposition that "she had not suffered any physical injury" to limit her claim to "mental and emotional injuries").

[3] *See* Officer Schaeffer Interview (App. 469) ("[H]e had the knife in his hand, I forget which hand. He got up, screamed, and went towards Nevado and that's when [Officer] Schutte discharged his weapon twice."); Officer Navedo Interview (App. 474) ("He lunged at me again with the knife making the same kind of jabbing motion. At that point Officer Schutte discharged two times into his lower torso with his firearm."); Officer Gresham Interview (App. 532) ("[H]e immediately popped back up, still holding the knife and again charged towards our direction."); Officer Schutte Interview (App. 563) ("He proceeded to rush toward us with the knife in an overhand position and I discharged my weapon twice.").

*Sacramento*, 888 F.3d 1030, 1038–39 (9th Cir. 2018) (immunizing officer applying deadly force in apartment after the deceased held "a knife in his hand in an elevated position"); *cf. Brown v. United States*, 256 U.S. 335, 343 (1921) (Holmes, J.) ("Detached reflection cannot be demanded in the presence of an uplifted knife."); *Johnson v. City of Philadelphia*, 837 F.3d 343, 346–47, 352 (3d Cir. 2016) (dismissing a claim against an officer who applied deadly force after the deceased survived a taser and then attacked, reaching for the officer's service weapon). To correct that error, I would have exercised jurisdiction over this appeal and reversed the denial of summary judgment. For that reason, I respectfully dissent.